IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GREGORY J. SLABAUGH,<br><br>       Plaintiff,<br><br>  v.<br><br>CHURCHILL CAPITAL CORPORATION IV, ATIEVA, INC. d/b/a LUCID MOTORS, MICHAEL KLEIN, JAY TARAGIN, and PETER RAWLINSON,<br><br>       Defendants. | Case No. 1:21-cv-01652-SEB-DLP<br><br>Judge Sarah Evans Barker |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO TRANSFER VENUE OR, IN THE ALTERNATIVE, STAY**

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| BACKGROUND | | 2 |
| A. | The Parties | 2 |
| B. | The Earlier-Filed *Phillips* Action | 3 |
| C. | Plaintiff's Complaint In This Action | 4 |
| ARGUMENT | | 5 |
| I. | THIS ACTION SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF ALABAMA PURSUANT TO 28 U.S.C. § 1404(a) | 5 |
| A. | Venue Is Proper In The Northern District Of Alabama To The Same Extent As In This District | 6 |
| B. | Transfer To The Northern District Of Alabama Will Serve The Convenience Of The Parties And Witnesses And Promote The Interests Of Justice | 7 |
| II. | IN THE ALTERNATIVE, THIS ACTION SHOULD BE STAYED PENDING RESOLUTION OF THE *PHILLIPS* ACTION | 12 |
| CONCLUSION | | 13 |

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Askin v. Quaker Oats Co.*,
   2012 WL 517491 (N.D. Ill. Feb. 15, 2012) .................................................................. 13

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for the W.D. Tex.*,
   571 U.S. 49 (2013) ........................................................................................................ 7

*Ballotti v. Oppenheimer Funds, Inc.*,
   2011 WL 13382871 (N.D. Ill. Feb. 23, 2011) ....................................................... 10, 11

*Bouas v. Harley-Davidson Motor Co. Grp., LLC*,
   2020 WL 2334336 (S.D. Ill. May 11, 2020) ............................................................... 12

*Carus Corp. v. Greater Tex. Finishing Corp.*,
   1992 WL 22691 (N.D. Ill. Jan. 31, 1992) ..................................................................... 9

*Chi., Rock Island & Pac. RR. Co. v. Igoe*,
   220 F.2d 299 (7th Cir. 1955) ........................................................................................ 8

*Clinton v. Jones*,
   520 U.S. 681 (1997) .................................................................................................... 12

*CMG Worldwide, Inc. v. Bradford Licensing Ass'n*,
   2006 WL 3248423 (S.D. Ind. Mar. 23, 2006) ......................................................... 8, 11

*Dean Foods Co. v. Eastman Chem. Co.*,
   2000 WL 1557915 (N.D. Ill. Oct. 19, 2000) ............................................................... 10

*Digonex Techs., Inc. v. Qcue, Inc.*,
   2012 WL 5844754 (S.D. Ind. Nov. 19, 2012) ............................................................. 10

*Emerson v. Sentry Life Ins. Co.*,
   2018 WL 4380988 (W.D. Wis. Sept. 14, 2018) .......................................................... 13

*Gen. Elec. Co. v. R Squared Scan Sys., Inc.*,
   1990 WL 7186 (N.D. Ill. Jan. 12, 1990) ....................................................................... 9

*Gilman v. Walters*,
   2012 WL 3229283 (S.D. Ind. Aug. 6, 2011) ................................................................ 8

*Harden v. Shulkin*,
   2017 WL 2930570 (S.D. Ind. July 6, 2017) ................................................................. 5

*Heller Fin., Inc. v. Midwhey Powder Co.*,
   883 F.2d 1286 (7th Cir. 1989) ...................................................................................... 8

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) .................................................................................................... 12

*Lumen Const., Inc. v. Brant Const. Co.*,
   780 F.2d 691 (7th Cir. 1985) ....................................................................................... 11

*Master Cutlery, Inc. v. Pac. Sol. Mktg., Inc.*,
   2013 WL 6440270 (S.D. Ind. Dec. 9, 2013) ................................................................. 7

*McReynolds v. Merrill Lynch & Co.*,
   694 F.3d 873 (7th Cir. 2012) ....................................................................................... 12

*Mgmt. Registry, Inc. v. Batinich*,
   2018 WL 1586244 (N.D. Ill. Apr. 2, 2018) ................................................................... 7

*Nicholson v. Nationstar Mortg. LLC of Del.*,
   2018 WL 3344408 (N.D. Ill. July 6, 2018) ............................................................ 12, 13

*Parungao v. Cmty. Health Sys., Inc.*,
   858 F.3d 452 (7th Cir. 2017) ......................................................................................... 2

*Phoenix Ins. Co. Ltd. v. Teva Pharm. Indus. Ltd.*,
   381 F. Supp. 3d 416 (E.D. Pa. 2019) .......................................................................... 6, 9

*Pyrolyx USA Ind., LLC v. Zeppelin Sys. GMBH*,
   2020 WL 3976975 (S.D. Ind. July 14, 2020) .............................................................. 11

*Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*,
   626 F.3d 973 (7th Cir. 2010) ............................................................................... 6, 9, 11

*Schachter v. City of Chi.*,
   848 F. App'x 208 (7th Cir. 2021) .................................................................................. 2

*Sec. & Exch. Comm'n v. Carrillo*,
   115 F.3d 1540 (11th Cir. 1997) ..................................................................................... 6

*Stewart Org., Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1988) ......................................................................................................... 6

*Tavistock Rest. Grp., LLC v. Zurich Am. Ins. Co.*,
   2021 WL 1614519 (N.D. Ill. Apr. 26, 2021) ............................................................ 9, 11

*Telman v. Capt. Crab, Inc.*,
   1986 WL 13722 (N.D. Ill. Dec. 4, 1986) ...................................................................... 7

*Trippe Mfg. Co. v. Am. Power Conversion Corp.*,
   46 F.3d 624 (7th Cir. 1995) ........................................................................................... 5

*U.S. Sec. & Exch. Comm'n v. Benger*,
  2009 WL 1851186 (N.D. Ill. June 29, 2009) ............................................................... 6

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964) ............................................................................................... 5, 7

*Voxx Int'l Corp. v. Johnson Safety, Inc.*,
  2017 WL 167798 (S.D. Ind. Jan. 17, 2017) ................................................................ 6

*Wagner v. Speedway LLC*,
  2021 WL 1192691 (N.D. Ill. Mar. 30, 2021) ............................................................ 12

*Wilkins v. Genzyme Corp.*,
  2020 WL 7864112 (S.D. Ind. Dec. 30, 2020) ............................................................ 9

*Zagami v. Cellceutix Corp.*,
  2016 WL 3199531 (S.D.N.Y. June 8, 2016) .............................................................. 7

**Statutes**

15 U.S.C. § 78aa ................................................................................................................ 6

28 U.S.C. § 1331 ................................................................................................................ 6

28 U.S.C. § 1404(a) ................................................................................................. *passim*

US.134092322.01

Defendants Lucid Group, Inc. (f/k/a Churchill Capital Corp IV) ("CCIV"), Atieva, Inc. d/b/a Lucid Motors ("Lucid"), Michael Klein, Jay Taragin, and Peter Rawlinson (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to transfer venue or, in the alternative, stay (the "Motion").

## PRELIMINARY STATEMENT

The Complaint in this action—which was commenced by the alleged holder of a small number of CCIV common shares—substantially duplicates the parties, claims, and allegations in an earlier-filed, putative class action in which Plaintiff is a potential class member. Separately litigating this action in this District not only would waste the time and resources of the parties, but it would also improperly tax the limited judicial resources of this and other federal courts.

Plaintiff, a purported CCIV stockholder, asserts claims against Defendants under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") in connection with allegedly false and misleading statements concerning a merger, announced on February 22, 2021 and consummated on July 23, 2021, between CCIV, a special purpose acquisition company (or "SPAC"), and Lucid (the "Merger"). Plaintiff's Complaint followed on the heels of—and borrowed liberally from—an earlier-filed complaint in the United States District Court for the Northern District of Alabama that was filed on behalf of a putative class of purchasers of CCIV stock in January and February 2021 (which includes Plaintiff), and that asserts the *same* claims, against the *same* Defendants, and is based on the *same* alleged wrongdoing.[1] Accordingly, for the sake of efficiency and to preserve judicial and party resources, Defendants seek to have this action transferred to the Northern District of Alabama pursuant to 28 U.S.C. § 1404(a), to be adjudicated

---

[1] *See Phillips v. Churchill Capital Corp. IV, et al.*, No. 1:21-cv-00539-ACA (N.D. Ala.) (the "*Phillips* Action") (Ex. A). References to "Ex. __" are to the exhibits attached to the Declaration of Paul A. Wolfla, filed contemporaneously with this memorandum.

US.134092322.01

alongside the *Phillips* Action. In the alternative, the Court should stay this action pending resolution of the *Phillips* Action to avoid the unnecessary duplication of efforts between this action and the *Phillips* Action.

## BACKGROUND[2]

### A. **The Parties**

Plaintiff alleges that he holds 100 shares of CCIV common stock, all of which were allegedly purchased "on a number of occasions throughout January and February 2021." Compl. ¶¶ 15, 17, 21, 25.

Prior to the Merger, Defendant CCIV was a SPAC that raised money from investors for the purpose of engaging in a merger or other transaction. CCIV was a Delaware corporation headquartered in New York, and its shares traded on the New York Stock Exchange (the "NYSE"). Compl. ¶ 6. CCIV had hundreds of millions of outstanding shares held by individual and institutional investors who resided both inside and outside of the United States.[3]

Defendant Michael Klein was CCIV's founder, Chairman of its Board of Directors, and its Chief Executive Officer. Compl. ¶ 8.

Defendant Jay Taragin was CCIV's Chief Financial Officer. Compl. ¶ 9.

Prior to the Merger, Defendant Lucid was a privately held company that designed and

---

[2] The factual background set forth herein is drawn from Plaintiff's Complaint, as well as from public court filings from related actions and SEC filings of which the Court may take judicial notice. *See Schachter v. City of Chi.*, 848 F. App'x 208, 208 (7th Cir. 2021) (taking judicial notice of "court filings and other matters of public record when the accuracy of those documents reasonably cannot be questioned") (quoting *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017)).

[3] As of March 15, 2021, CCIV had 207,000,000 shares of Class A common stock and 51,750,000 shares of Class B common stock issued and outstanding. March 15, 2021 Churchill Capital Corp IV Form 10-K at cover page (Ex. D).

2

manufactured luxury electric vehicles. Lucid was headquartered in Newark, California. Defendant Peter Rawlinson was Lucid's Chief Executive Officer. Compl. ¶ 7.

On July 23, 2021, upon the closing of the Merger, Lucid became a wholly-owned subsidiary of CCIV, and CCIV changed its name to Lucid Group, Inc. July 26, 2021 Lucid Group, Inc. Form 8-K at 3 (Ex. E). Thereafter, CCIV was delisted from the NYSE, and Lucid Group, Inc. common shares were listed on The Nasdaq Stock Market LLC under the ticker symbol "LCID." *Id.* at 3. Mr. Rawlinson is a director of Lucid Group, Inc. and its Chief Executive Officer and Chief Technology Officer. *Id.* at 7-8.

### B. The Earlier-Filed *Phillips* Action

The *Phillips* Action was filed on April 18, 2021, nearly two months before the filing of this action, by another purported CCIV stockholder, asserting claims against Defendants under Sections 10(b) and 20(a) of the Exchange Act on behalf of a putative class of CCIV stockholders who purchased CCIV shares between January 11, 2021 and February 22, 2021. *Phillips* Compl. ¶ 1 (Ex. A). The plaintiff in the *Phillips* Action alleges that market rumors began circulating in January 2021 concerning a potential transaction between CCIV and Lucid, and that none of Defendants corrected those rumors. *Id.* ¶ 21. The *Phillips* plaintiff further alleges that, prior to the announcement of the Merger, Lucid and Mr. Rawlinson made allegedly false and misleading statements to the market concerning the timing for Lucid to begin producing electric vehicles and the quantity of vehicles Lucid expected to sell in 2021. *See id.* ¶¶ 23-25. Specifically, Mr. Rawlinson allegedly told national media outlets in February 2021 that he wanted to make 6,000 vehicles during 2021 and "was aiming for a spring delivery of [Lucid's] first vehicles." *Id.* ¶¶ 23, 25.[4] According to the *Phillips* Complaint, CCIV's stock price increased throughout January and

---

[4] Plaintiff alleges that these statements were published online and/or aired on major cable television networks, including Forbes Magazine, CNBC, and Fox Business News. Compl. ¶¶ 18,

February 2021, until February 22, 2021 (the date the Merger was announced), when CCIV's stock price declined, allegedly causing losses for the putative class. *Id.* ¶¶ 22, 29, 30.

On May 6, 2021, the plaintiff in the *Phillips* Action published a notice pursuant to the Private Securities Litigation Reform Act alerting prospective class members of the pendency of a class action involving CCIV stockholders. *Phillips* Action, Dkt. 25-3. On June 21, 2021, two purported CCIV stockholders moved for appointment as lead plaintiffs. *Phillips* Action, Dkt. 25. On June 22, 2021, the court in the *Phillips* Action ordered that the plaintiff publish an amended notice advising purported class members that they must file lead plaintiff motions within 60 days of publication of the amended notice, which the plaintiff did on June 29, 2021. *Phillips* Action, Dkts. 28-29. The new deadline for filing lead plaintiff motions in the *Phillips* Action is August 30, 2021.

      C.     **Plaintiff's Complaint In This Action**

Nearly two months after the *Phillips* Action was commenced (and over a month after the *Phillips* plaintiff published his original notice of the pending class action), Plaintiff in this action filed his Complaint on June 11, 2021. The only connection to this District is that Plaintiff claims to be a resident of Indiana. Compl. ¶ 5. Plaintiff does not (and cannot) allege that any of the underlying events in this action occurred in Indiana. Plaintiff's Complaint is otherwise duplicative of the complaint in the *Phillips* Action—indeed, 28 of 50 paragraphs in Plaintiff's Complaint are copied nearly verbatim:[5]

---

20, 22; *Phillips* Compl. ¶¶ 23-25 (Ex. A). These statements were accordingly available to a nationwide audience, including CCIV stockholders who resided in the Northern District of Alabama.

[5] Two additional actions that are also virtually identical to the *Phillips* Action have been filed in federal courts in California (by the same counsel who represent Plaintiff here) and New Jersey: *Simeri v. Churchill Capital Corp. IV, et al.*, No. 2:21-cv-04295-DSF-PD (C.D. Cal., filed May 24, 2021) (Ex. B); and *Arico v. Churchill Capital Corp. IV, et al.*, No. 3:21-cv-12355-ZNQ-LHG

| This Action | Phillips Action | This Action | Phillips Action |
|---|---|---|---|
| ¶ 6 | ¶ 6 | ¶ 24 | ¶ 26 |
| ¶ 7 | ¶ 7 | ¶ 26 | ¶ 27 |
| ¶ 8 | ¶ 8 | ¶ 27 | ¶ 28 |
| ¶ 9 | ¶ 9 | ¶ 28 | ¶ 29 |
| ¶ 10 | ¶ 10 | ¶ 35 | ¶ 34 |
| ¶ 11 | ¶ 11 | ¶ 37 | ¶ 31 |
| ¶ 12 | ¶ 12 | ¶ 38 | ¶ 32 |
| ¶¶ 13, 14 | ¶ 21 | ¶ 41 | ¶ 19 |
| ¶ 16 | ¶ 22 | ¶ 42 | ¶¶ 39, 40 |
| ¶¶ 18, 19 | ¶ 23 | ¶ 47 | ¶ 44 |
| ¶ 20 | ¶ 24 | ¶ 48, 43 | ¶ 41 |
| ¶ 22, 23 | ¶ 25 | ¶ 49 | ¶ 46 |

## ARGUMENT

### I. THIS ACTION SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF ALABAMA PURSUANT TO 28 U.S.C. § 1404(a)

This action easily satisfies all of the requirements for a transfer under Section 1404(a) and accordingly should be transferred to the Northern District of Alabama, where the *Phillips* Action is pending. Section 1404(a) provides: "For the convenience of the parties and witnesses, and in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of Section 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964), *quoted in Harden v. Shulkin*, 2017 WL 2930570, at *1 (S.D. Ind. July 6, 2017). As explained by the United States Court of Appeals for the Seventh Circuit, Section 1404(a) allows district courts to use their "ample degree of discretion" to transfer cases in order "to avoid duplicative litigation," as is the case here. *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995) (citation omitted). Federal securities cases such as this one are properly transferred under Section 1404 to

---

(D.N.J., filed June 9, 2021) (Ex. C). Defendants anticipate filing similar motions to transfer those actions to the Northern District of Alabama.

5

the district where an earlier-filed, putative class action asserting the same claims is pending. *See, e.g.*, *Phoenix Ins. Co. Ltd. v. Teva Pharm. Indus. Ltd.*, 381 F. Supp. 3d 416, 422-25 (E.D. Pa. 2019).

A transfer pursuant to Section 1404(a) is appropriate where: "(1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice." *Voxx Int'l Corp. v. Johnson Safety, Inc.*, 2017 WL 167798, at *2 (S.D. Ind. Jan. 17, 2017) (citation omitted). In deciding whether to transfer an action, district courts may "look beyond a narrow or rigid set of considerations." *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

A. **Venue Is Proper In The Northern District Of Alabama To The Same Extent As In This District**

With respect to the first two factors, venue is proper in the Northern District of Alabama to the same extent as it is proper in this District, and this action therefore could have been commenced there. Section 27 of the Exchange Act provides for nationwide jurisdiction in any district "wherein the defendant is found or is an inhabitant or transacts business." 15 U.S.C. § 78aa.[6] Where, as here, defendants are alleged to have disseminated false and misleading statements through "documents publicly filed with the [United States Securities and Exchange

---

[6] In addition, both this District and the Northern District of Alabama have personal jurisdiction over Defendants because Defendants reside or are headquartered in the United States. *See U.S. Sec. & Exch. Comm'n v. Benger*, 2009 WL 1851186, at *7 (N.D. Ill. June 29, 2009) (claims under the Exchange Act "confer[] personal jurisdiction in federal court over defendants with minimum contacts with the United States"); *Sec. & Exch. Comm'n v. Carrillo*, 115 F.3d 1540, 1544 (11th Cir. 1997) (the "applicable forum for minimum contacts purposes is the United States"). And both this District and the Northern District of Alabama have subject matter jurisdiction over the controversy because it arises under federal law. *See* 28 U.S.C. § 1331.

Commission] and popular media," venue may be established in any district in which such materials were received. *Zagami v. Cellceutix Corp.*, 2016 WL 3199531, at *4 (S.D.N.Y. June 8, 2016); *see also Telman v. Capt. Crab, Inc.*, 1986 WL 13722, at *3 (N.D. Ill. Dec. 4, 1986) (finding venue proper by virtue of defendants' dissemination of information in the district through restaurant trade magazines and investment publications). The conclusion that venue is proper in the Northern District of Alabama establishes that that District is one where this action "might have been brought," thereby satisfying Section 1404(a)'s second requirement. *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for the W.D. Tex.*, 571 U.S. 49, 57 (2013) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 623-24 (1964)).

   B. **Transfer To The Northern District Of Alabama Will Serve The Convenience Of The Parties And Witnesses And Promote The Interests Of Justice**

Transfer to the Northern District of Alabama will avoid duplicative litigation and, thus, serve the convenience of the parties and witnesses and, more importantly, promote the interests of justice. When evaluating a motion to transfer under Section 1404(a), courts in this District consider: "(1) the convenience of the parties; (2) the convenience of the witnesses; (3) the situs of material events and access to proof; and (4) the interest of justice." *Master Cutlery, Inc. v. Pac. Sol. Mktg., Inc.*, 2013 WL 6440270, at *2 (S.D. Ind. Dec. 9, 2013).

*Convenience of the Parties and Witnesses*. This factor weighs decisively in favor of transfer to the Northern District of Alabama, for adjudication alongside the earlier-filed *Phillips* Action, because Defendants and witnesses should not be made to appear in two different actions in two different jurisdictions in connection with the same underlying facts and claims. *See, e.g.*, *Mgmt. Registry, Inc. v. Batinich*, 2018 WL 1586244, at *5 (N.D. Ill. Apr. 2, 2018) ("To haul witnesses into an Illinois courtroom whose roles are potentially duplicative in the Minnesota action . . . would contravene the purpose of § 1404(a), to prevent the waste of time, energy and money

7

and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." (internal quotations omitted)).

While Plaintiff alleges that he is an Indiana resident and may argue that litigating his claims in Indiana is more convenient for him, he does not (and cannot) allege any factual support for a connection between this District in particular (or Indiana in general) and the facts and circumstances underlying this action—at least, nothing beyond the alleged receipt of media reports and SEC filings here, which is equally true in the Northern District of Alabama. A plaintiff's choice of forum is entitled to less deference "when the forum of the plaintiff's choice has no significant connection to the site of material events." *Chi., Rock Island & Pac. RR. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955); *see also Gilman v. Walters*, 2012 WL 3229283, at *2 (S.D. Ind. Aug. 6, 2011) (noting that under Seventh Circuit precedent, plaintiff's choice of forum "has 'minimal value where none of the conduct . . . occurred in the forum selected by the plaintiff'" (alteration in original) (citation omitted)); *CMG Worldwide, Inc. v. Bradford Licensing Ass'n*, 2006 WL 3248423, at *4 (S.D. Ind. Mar. 23, 2006) ("Where the plaintiff's choice of forum is not the situs of the material events, or has a relatively weak connection to the events, plaintiff's chosen forum is entitled to less deference.").

*Situs of Material Events and Access to Proof.* Neither this District nor the Northern District of Alabama has any meaningful connection to the situs of material events, and access to proof will be the same in both venues. Accordingly, this factor is neutral.

*Interest of Justice.* The interest of justice concerns a number of factors that bear on the efficient administration of justice among the federal courts, including the consideration of "trying related litigation together." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989). Indeed, one of the most "powerful" and "significant" reasons to grant transfer is the

presence of related litigation in another district. *See, e.g.*, *Wilkins v. Genzyme Corp.*, 2020 WL 7864112, at *2 (S.D. Ind. Dec. 30, 2020) (the "presence of ongoing or past litigation in the transferee court that is similar to the case at hand is one of the *most significant* factors when considering transfer") (emphasis added)); *see also Tavistock Rest. Grp., LLC v. Zurich Am. Ins. Co.*, 2021 WL 1614519, at *9 (N.D. Ill. Apr. 26, 2021) ("The existence of related litigation in the proposed transferee forum 'is a significant factor in favor of transfer' because such transfer 'would prevent duplication of discovery, unnecessary expenses for the court and parties, and the waste of judicial resources.'" (citations omitted)); *Carus Corp. v. Greater Tex. Finishing Corp.*, 1992 WL 22691, at *2 (N.D. Ill. Jan. 31, 1992) ("The most compelling factor in determining the appropriateness of transfer is the interest of society in the efficient administration of justice. As a general proposition, cases should be transferred to the district where related actions are pending."); *Gen. Elec. Co. v. R Squared Scan Sys., Inc.*, 1990 WL 7186, at *3 (N.D. Ill. Jan. 12, 1990) ("The presence of a related case in the transferee forum is a *powerful* reason to grant a change of venue." (emphasis added)). This rule applies with force to federal securities actions. *See Phoenix Ins. Group Ltd.*, 381 F. Supp. 3d at 423 (recognizing, in context of Section 1404(a) motion to transfer federal securities case, that "'the existence of a related action in another district is a sound reason for favoring transfer when the venue is proper there, even though the transfer conflicts with the plaintiff's choice of forum'" (citation omitted)).[7]

---

[7] Transfer to the Northern District of Alabama is also in the interests of justice given the relative congestion of the dockets in the two districts. *See, e.g.*, *Rsch. Automation*, 626 F.3d at 978. For the twelve-month period ending March 31, 2021, there were 914 civil cases filed in this District (versus 273 filed in the Northern District of Alabama) and 2,306 cases pending per judge in this District (versus 403 cases pending per judge in the Northern District of Alabama). Administrative Office of the U.S. Courts, National Judicial Caseload Profile for the 12-Month Period Ending March 31, 2021, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile 0331.2021.pdf.

In addition, it is an even more "powerful" and "significant" reason to grant transfer where the prior-filed action is a putative class action. The decision in *Ballotti v. Oppenheimer Funds, Inc.*, 2011 WL 13382871 (N.D. Ill. Feb. 23, 2011), is instructive in this regard. In *Ballotti*, after other investors filed a putative class action asserting claims for fraud and misrepresentation in federal court in Colorado, a resident of Illinois filed an individual action asserting similar claims in federal court in Illinois. *Id.* at *1-2. The court granted the defendants' motion to transfer under Section 1404(a), stating that "it is in the interests of justice and judicial economy to keep related litigation together," and, "[c]onsequently, the pendency of the Colorado class actions . . . weigh heavily in favor of transfer." *Id.* at *5; *see also Dean Foods Co. v. Eastman Chem. Co.*, 2000 WL 1557915, at *5 (N.D. Ill. Oct. 19, 2000) (transferring individual action to forum where related class action was pending to avoid duplication). The court further stated that, "[a]lthough there may be some additional legal issues that arise in each separate case, . . . the similarity of the factual issues [is] extensive," and "[t]hese similarities lend themselves to the possible consolidation of discovery and the conservation of time, energy and money, and the avoidance of the possibility of inconsistent judgments." *Ballotti*, 2011 WL 13382871, at *5.[8]

As in *Ballotti*, there is no doubt that this action and the *Phillips* Action are related—this action is literally a "cut-and-paste" of the *Phillips* Action, and the claims, defendants, and factual issues are *identical*. Forcing both this Court and the Northern District of Alabama to adjudicate

---

[8] While the court in *Ballotti* also noted that the defendant manager of the fund in which the plaintiff had invested was a Colorado corporation with a business presence in the District of Colorado (2020 WL 13382871, at *1), here, none of the four actions that have been filed by purported CCIV stockholders is in a forum in which any Defendant resides or is headquartered. Defendants do not contest that venue is appropriate in the Northern District of Alabama under Section 27 of the Exchange Act, and respectfully submit that concentrating all four related actions in the forum of the first-filed *Phillips* Action—brought on behalf of a putative class in which each of the other plaintiffs is a member—would best promote the interests of justice, efficiency, and judicial economy.

what are effectively the same case would be a tremendous waste of scarce judicial resources. *See Digonex Techs., Inc. v. Qcue, Inc.*, 2012 WL 5844754, at *3 (S.D. Ind. Nov. 19, 2012) (finding it appropriate to transfer action to district where "broader" preexisting litigation that covers same issues was pending to "conserve judicial resources and promote efficiency"). Likewise, forcing Defendants to defend substantively identical actions in more than one district simultaneously would be obviously inefficient and costly, and would present a significant risk of inconsistent judgments. *See, e.g.*, *Tavistock*, 2021 WL 1614519 at *9 ("[T]o deny [defendant]'s motion to transfer . . . would have a serious negative consequence: two mirror-image suits proceeding simultaneously in two different courts, with the resulting waste of resources to this Court, the assigned judge in the [transferee forum], and the Parties."); *Pyrolyx USA Ind., LLC v. Zeppelin Sys. GMBH*, 2020 WL 3976975, at *10 (S.D. Ind. July 14, 2020) ("[J]udicial considerations also counsel in favor of this Court exercising its inherent power to prevent duplicative, piecemeal litigation. The Court has a strong interest in avoiding duplicative litigation that could produce contradictory results."); *CMG Worldwide*, 2006 WL 3248423, at *5 (granting transfer to a district court where a related case was pending to avoid duplicative litigation); *Lumen Const., Inc. v. Brant Const. Co.*, 780 F.2d 691, 694 (7th Cir. 1985), *quoted in Pyrolyx*, 2020 WL 3976975, at *10 ("[J]udicial economy is not the only value that is placed in jeopardy[;] . . . [t]he legitimacy of the court system in the eyes of the public and fairness to the individual litigants are also endangered by duplicative suits that are the product of gamesmanship or that result in conflicting adjudications.").[9]

---

[9] Moreover, although the Seventh Circuit has "never laid down an inflexible rule that the prior filing controls," a district court many nonetheless evaluate the order of filing as part of its Section 1404(a) analysis. *Rsch. Automation*, 626 F.3d at 980, 982. Here, "[i]n view of the considerable resources that would be conserved by transfer, . . . the first-filed rule leans in favor of transfer." *Tavistock*, 2021 WL 1614519 at *10.

11

US.134092322.01

## II.   IN THE ALTERNATIVE, THIS ACTION SHOULD BE STAYED PENDING RESOLUTION OF THE *PHILLIPS* ACTION

In the event that this Court declines to transfer the action, it should stay the action pending resolution of the *Phillips* Action in the Northern District of Alabama. This Court, like all district courts, "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). Granting a stay is particularly appropriate where, as here, the case is duplicative of a parallel action already pending in another federal court. *See, e.g.*, *Wagner v. Speedway LLC*, 2021 WL 1192691, at *2 (N.D. Ill. Mar. 30, 2021) (granting stay pending resolution of first-filed action to "prevent all parties from litigating identical claims in different forums," and "allow[ing] for judicial expediency, efficiency, and consistency"); *Bouas v. Harley-Davidson Motor Co. Grp., LLC*, 2020 WL 2334336, at *1 (S.D. Ill. May 11, 2020) (granting stay pending resolution of first-filed action to "conserve scarce judicial resources" and "avoid[] duplicative litigation"). "District courts are accorded 'a great deal of latitude and discretion' in determining whether one action is duplicative of another," *Nicholson v. Nationstar Mortg. LLC of Del.*, 2018 WL 3344408, at*5 (N.D. Ill. July 6, 2018) (citations omitted), but generally, a suit is duplicative if, as here, "the claims, parties, and available relief do not significantly differ between the two actions." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 889 (7th Cir. 2012).

In evaluating whether to grant a stay, courts also consider whether the stay would: "(1) unduly prejudice or tactically disadvantage the non-moving party, (2) simplify the issues in question and streamline the trial, and (3) reduce the burden of litigation on the parties and on the court." *Wagner*, 2021 WL 1192691, at *1.

Here, all three factors are met. First, Plaintiff would not be unduly prejudiced or disadvantaged by allowing the *Phillips* Action to proceed first because Plaintiff's claims will be preserved in this Court and Plaintiff will have a chance to opt out of the *Phillips* Action if a class is certified. *See, e.g.*, *Emerson v. Sentry Life Ins. Co.*, 2018 WL 4380988, at *3 (W.D. Wis. Sept. 14, 2018). Second, a stay would simplify the issues by preventing "unnecessary duplication of . . . the underlying substantive questions." *Askin v. Quaker Oats Co.*, 2012 WL 517491, at *6 (N.D. Ill. Feb. 15, 2012). Because most or all of the legal issues in this action are likely to be addressed in the *Phillips* Action, staying this proceeding would enable this Court to consider the Northern District of Alabama's prior determinations of those same issues, and would potentially streamline the issues for determination in this action while reducing the risk of inconsistent determinations. Finally, and for similar reasons, a stay would reduce the burden of litigation on the Court and the parties, as the court in the *Phillips* Action will likely analyze and resolve the key issues in the case. *Nicholson*, 2018 WL 334408, at *9 (staying later-filed case because it involved "many of the same factual issues" as the earlier-filed case, and a decision in the earlier case "may materially reduce the issues to be decided" in the later-filed case).

## **CONCLUSION**

For all of these reasons, this action should be transferred to the Northern District of Alabama pursuant to 28 U.S.C. § 1404(a) or, in the alternative, stayed during the pendency of the *Phillips* Action.

Dated: August 3, 2021

Respectfully submitted,

| | |
|---|---|
| /s/ Nicole M. Schoor | /s/ Paul A. Wolfla |
| Nicole M. Schnoor (35488-79) | Paul A. Wolfla (24709-49) |
| WIEDNER & MCAULIFFE, LTD. | FAEGRE DRINKER BIDDLE |
| 11 North Third Street | & REATH LLP |
| Lafayette, Indiana 47901 | 300 N. Meridian Street, Suite 2500 |
| Telephone: (765) 362-7553 | Indianapolis, Indiana 46204 |
| nmschnoor@wmlaw.com | Telephone: (317) 237-1241 |
| | paul.wolfla@faegredrinker.com |
| - and - | |
| | - and - |
| Brian M. Burnovski (*pro hac vice forthcoming*) | |
| Daniel J. Schwartz (*pro hac vice forthcoming*) | John A. Neuwirth (*pro hac vice pending*) |
| | Joshua S. Amsel (*pro hac vice pending*) |
| DAVIS POLK & WARDWELL LLP | Evert J. Christensen, Jr. (*pro hac vice pending*) |
| 450 Lexington Avenue | Amanda K. Pooler (*pro hac vice pending*) |
| New York, New York 10017 | WEIL, GOTSHAL & MANGES LLP |
| Telephone: (212) 450-4000 | 767 Fifth Avenue |
| brian.burnovski@davispolk.com | New York, New York 10153 |
| daniel.schwartz@davispolk.com | Telephone: (212) 310-8000 |
| | john.neuwirth@weil.com |
| | joshua.amsel@weil.com |
| *Attorneys for Defendants Lucid Group, Inc. (f/k/a Churchill Capital Corp IV), Atieva, Inc. d/b/a Lucid Motors, and Peter Rawlinson* | evert.christensen@weil.com |
| | amanda.pooler@weil.com |
| | *Attorneys for Defendants Michael Klein and Jay Taragin* |